UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SPIROS ALATORRE, ) | |
| EDWARD PARTLOW, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:23-cv-00282-JPH-KMB |
| ) | |
| ERIC J. HOLCOMB, ) | |
| ROBERT E. CARTER, JR., ) | |
| DAUSS, ) | |
| DENNIS REAGLE, ) | |
| INDIANA DEPARTMENT OF ) | |
| CORRECTION, ) | |
| CENTURION MEDICAL PROVIDER, ) | |
| ) | |
| Defendants. ) | |

**ORDER SCREENING COMPLAINT,
DISMISSING INSUFFICIENT CLAIMS, SEVERING CLAIMS,
AND DIRECTING SERVICE OF PROCESS**

Plaintiffs Spiros Alatorre and Edward Partlow initiated this civil rights action pursuant to 42 U.S.C. § 1983 on February 15, 2023. Dkt. 4. The Plaintiffs are Indiana Department of Correction (IDOC) inmates at Pendleton Correctional Facility. Plaintiffs allege that the water at Pendleton Correctional Facility where they are housed is contaminated and unsafe to use and drink. Plaintiffs claim that they were and continue to be exposed to and harmed by the contaminated water. *Id.* Plaintiffs bring claims under the Eighth Amendment and the federal Safe Drinking Water Act alleging that they were exposed to an environmental hazard, and additional claims under the First and Eighth Amendment alleging that they were denied medical care and retaliated against for complaining about the contaminated water. *Id.*

Because Plaintiffs are "prisoners" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen their complaint. For the reasons explained below, certain claims proceed, certain claims are dismissed for failure to state a claim upon which relief may be granted, and other claims shall be severed as improperly joined.

## I. Screening Standard

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints such as that filed by the Plaintiffs are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (internal quotation omitted).

## II. The Complaint

Plaintiffs bring their claims against four individuals in both their official and individual capacities—Indiana Governor, Eric Holcomb; IDOC

Commissioner, Robert E. Carter, Jr.; Dr. Dauss, IDOC Medical Director; and Pendleton Warden Dennis Reagle,[1] dkt. 4 at 1—and against the IDOC and Centurion, the private-contractor medical provider for the IDOC. *Id.*

Plaintiffs allege that beginning in 2021, they have been exposed to water "that has legionella bacteria and other possible bacteria and chemical contaminates" in it. *Id.* at 5. Plaintiffs claim the contamination is from old lead piping. *Id.* They allege that they have suffered injuries from drinking the water and using it to shower. *Id.* at 5-6. Specifically, Plaintiffs have experienced coughing, headaches, abdominal pain, muscle aches, shortness of breath, nausea, cold chills, fever and diarrhea, digestive complications, cardiovascular problems, and potential kidney problems. *Id.* Plaintiffs state that they have not been provided adequate treatment for these conditions. *Id.*

Plaintiffs seek declaratory and injunctive relief, and compensatory and punitive damages. *Id.* at 2, 15-16. Related to injunctive relief, Plaintiffs request that the defendants replace the old lead piping at Pendleton, that they be seen by a medical provider outside the facility, that the facility hire more staff or activate the National Guard to handle medical care and/or transportation to medical facilities, and that the facility install intercoms in cell houses so inmates can communicate their needs for immediate medical services. *Id.*

Plaintiffs' claims fall into two categories: the "core" claims based on the unsafe condition of the water, and claims based on the denial of medical care.

---

[1] The complaint named "Warden Dennis Reagal" but this is an incorrect spelling of the Warden's name. **The clerk is directed to update the docket to reflect the correct spelling**: "Warden Dennis Reagle."

**A. Unsafe Water Claims**

Plaintiffs allege that they were exposed to contaminated water and became sick as a result. Plaintiffs' first claim is that the defendants were deliberately indifferent to the conditions at Pendleton because they were aware of reports of contaminated water but did not remedy the problem. Plaintiffs allege that the failure to "change the lead piping at Pendleton" also constitutes negligence under Indiana law. *Id.* at 13. Finally, Plaintiffs allege that the defendants' actions violate the Safe Drinking Water Act (SDWA), 42 U.S.C § 300f *et seq* (1974). *Id.* at 8, 14-15.

**B. Failure to Provide Medical Care Claims**

Plaintiffs allege that the defendants were deliberately indifferent to their medical needs and that they are responsible for short-staffing issues at the facility which has contributed to the lack of sufficient medical treatment. *Id.* at 9-10. Specifically, Plaintiffs allege that they were denied medical care in response to an array of symptoms including coughing, headaches, abdominal pain, muscle aches, shortness of breath, nausea, cold chills, fever and diarrhea, digestive complications, cardiovascular problems, and potential kidney problems. *Id.* Plaintiffs allege that the denial of medical care also constituted negligence under Indiana law. *Id.* at 13.

Relatedly, Plaintiffs claim that the defendants retaliated against them when they continued to deny them medical care, despite their numerous symptoms, and treated them as nuisances because they continued to seek medical care. *Id.* at 12.

### III. Discussion

The crux of Plaintiffs' claims relates to water safety at Pendleton. **Claims for injunctive relief related to water safety, that is, to fix the problem and provide safe water, will proceed** in this action.

**All other claims are dismissed** for failure to state a claim upon which relief may be granted or because they are improperly joined.

### A. Unsafe Water Claims

#### 1. Eighth Amendment Conditions of Confinement

Under the Eighth Amendment, the government must "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Inmates are entitled to "minimal civilized measures of life's necessities." *Id.* at 834. "Exposure to a significant risk of severe injury" can violate the Eighth Amendment. *See Myers v. Ind. Dep't. of Corr.*, 655 F. App'x 500, 504 (7th Cir. 2016). "Unacceptable conditions include those that pose a substantial risk to inmate health or safety." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (internal quotation omitted). "Just as correctional officers cannot deprive inmates of nutritional food, they cannot deprive inmates of drinkable water." *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015).

Plaintiffs' Eighth Amendment conditions of confinement and state law

negligence claims related to the failure to remedy the contaminated water issue **shall proceed against IDOC Commissioner Carter and Warden Reagle only**.

"Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Here, Plaintiffs do not allege sufficient facts to conclude that Governor Holcomb, Dr. Dauss, or Centurion were responsible for replacing the water pipes at Pendleton or otherwise providing clean water at the facility. Moreover, the positions of those defendants do not suggest that they are responsible for Plaintiffs' conditions of confinement.

Conversely, Plaintiffs allege that the IDOC Commissioner and the Warden were personally aware of the contaminated water, and they received additional reports from outside private contractors and the news media. Dkt. 4 at 7. Plaintiffs also allege that part of the IDOC Commissioner and the Warden's roles are to ensure that inmates' basic needs, in this case access to safe drinking water, are being met at the facility. *Id.* at 3-4.

The Court further discerns that it is plausible given their positions/titles that the IDOC Commissioner and the Warden had personal operational responsibilities for providing safe water at Pendleton. *See, e.g., Haywood v. Hathaway*, 842 F.3d 1026, 1032-33 (7th Cir. 2016) (holding that the warden could be held personally responsible for the harm caused by cold prison conditions because he "had actual knowledge of the unusually harsh weather conditions, that he had been apprised of the specific problem with the physical

6

condition of [the plaintiff's] cell (*i.e.*, the windows would not shut), and that, during the time period of [the plaintiff's] complaint, the warden toured the segregation unit himself"); *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) (holding that the warden was personally responsible because he "not only knew about the problems but was personally responsible for changing prison policies so that they would be addressed").

Accordingly, the Eighth Amendment conditions of confinement claims against Governor Holcomb, Dr. Dauss, and Centurion are **dismissed**.

### 2. Safe Drinking Water Act Claims

Plaintiffs assert that the defendants are liable for failing to provide safe drinking water in violation of the SDWA. The SDWA was passed to establish uniform standards for public water systems and to reduce contamination in drinking water. 67 Am. Jur. Proof of Facts 3d 95 (Vinal, R. 2002) (citing 42 U.S.C. §§ 300f *et seq.*). The SDWA gives private persons authority to bring an enforcement action for injunctive relief, *Hootstein v. Amherst-Pelham Reg'l Sch. Comm.*, 361 F. Supp. 3d 94, 105 (D. Mass 2019), but "there is no private right of action for damages arising from a violation of the SDWA." *Mays v. City of Flint, Mich.*, 871 F.3d 437, 450 (6th Cir. 2017) (citation omitted); *see also Phan v. Aurora City Water Util. Admin.*, No. 21-CV-00960-GPG, 2021 WL 5629068, at *1 (D. Colo. Apr. 13, 2021).

Based on the screening standard above and Plaintiffs' requests for injunctive relief to remedy the contaminated water, Plaintiffs' SDWA claims **shall**

**proceed against the IDOC and against IDOC Commissioner Carter, in his official capacity only**.

There are no allegations that any other defendants were responsible for Pendleton's compliance with the SDWA.

### B. Dismissal of Certain Claims and Defendants

#### 1. Indiana Department of Correction

While the SDWA claim may proceed against the IDOC at this time, Plaintiffs' constitutional claims against the IDOC **must be dismissed** because the IDOC is a state agency that cannot be sued under 42 U.S.C. § 1983 without its consent. *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005); *Nunez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016) ("An agency of the state enjoys this same immunity.").

#### 2. Official Capacity Claims are Limited to Injunctive Relief

Plaintiffs' claims for money damages against the defendants in their official capacities are **dismissed**. *See, e.g., Davis v. City of Chi.,* 559 F. App'x 305, 306 (7th Cir. 2016) ("[A]n official-capacity suit is presumed only when a plaintiff seeks injunctive relief from official policies," and "an official-capacity suit for damages makes no sense."); *see also Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (holding that prisoner's claim for money damages against IDOC officials acting in their official capacity was barred by the Eleventh Amendment).

Thus, only claims for injunctive relief against state officials in their official capacity may proceed. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (a plaintiff may file "suit[ ] against state officials seeking prospective equitable relief

for ongoing violations of federal law. . . ."); *Ind. Prot. and Advocacy Servs. v. Ind. Family and Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010) (discussing exceptions to the Eleventh Amendment's bar against actions in federal court against state officials acting in their official capacities).

### C. Medical Care Claims Shall be Severed

Plaintiffs' claims against Dr. Dauss and Centurion allege that they failed to provide them with adequate medical care. These claims are separate and distinct from the core claim presented in Plaintiffs' complaint, that is, prison officials at Pendleton have failed and continue to fail to provide safe water.

#### 1. Dismissal of Medical Claims Against Certain Defendants

Of the six defendants named in the complaint only two of them have responsibility for providing medical care at Pendleton—Dr. Dauss and Centurion. The positions of each of the other defendants do not suggest that they are medical providers or responsible for providing medical care. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (holding that the supervisor at issue was not personally responsible; "[t]he Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.").

Plaintiffs allege that all defendants are responsible for "policies and practices," but this conclusory allegation is insufficient to provide fair notice of the policy or practice at issue. Dkt. 4 at 7; *see also Iqbal*, 556 U.S. at 678. In addition, there are insufficient factual allegations to support a claim based on the theory that a policy of understaffing custodial employees was the reason that

9

Plaintiffs were not taken to the medical department for treatment. While Fed. R. Civ. P. 8(a) requires only a short and plain statement of the claim showing entitlement to relief, Plaintiffs' complaint must nevertheless provide defendants with adequate notice of what actions they took or failed to take that infringed on Plaintiffs' constitutional rights.

For these reasons, the denial of medical care claims, state law negligence claims, and related retaliation claims are **dismissed** against Governor Holcomb, IDOC Commissioner Carter, and Warden Reagle, for failure to state a claim upon which relief may be granted.

### 2. Severance of Claims

As noted above, the crux of Plaintiffs' claims relates to the allegedly unsafe condition of the water at Pendleton and their request for injunctive relief that responsible prison officials take action to make the water safe. Rule 18 of the Federal Rules of Civil Procedure allows joinder of multiple parties only when the allegations against them involve the same conduct or transaction and common questions of fact and law as to all defendants. Rule 20(a) allows defendants to be joined in one action if a right to relief is asserted against them jointly with respect to the same transaction or occurrence, and a question of law or fact common to all defendants will arise in the action.

"Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). When a claim includes improperly joined claims, "[t]he court may . . . add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. A district court has

broad discretion to sever a claim under Rule 21. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000); *see also Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (reviewing district court's decision to sever the plaintiff's claims for an abuse of discretion). It may exercise that discretion "to sever any claims that are 'discrete and separate' in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*, 604 F. App'x 508, 513 (7th Cir. 2015) (citing *Gaffney*, 451 F.3d at 442; *Rice*, 209 F.3d at 1016; *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985)). To be "discrete and separate . . . , one claim must be capable of resolution despite the outcome of the other claim." *Gaffney*, 451 F.3d at 442 (internal quotation marks omitted).

That is the case here. The core claims related to contaminated water against the IDOC and individuals responsible for providing safe water at Pendleton are separate and distinct from the claims alleging inadequate medical care. **These misjoined claims alleging inadequate medical care shall either be severed into new actions or dismissed without prejudice**.

Because the Plaintiffs are the masters of their complaint, Plaintiffs may choose what to do with these other claims. *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005) (noting that the composition and content of the complaint are entirely the responsibility of the plaintiff, for "even pro se litigants are masters of their own complaints and may choose who to sue-or not to sue"). If a new action is opened to pursue the denial of medical care claim, state law negligence claim regarding medical care, and the related retaliation claim, Plaintiffs will be

responsible for the filing fee associated with the new case. In addition, the screening requirement of 28 U.S.C. § 1915A(b) will be triggered for the new case.

Plaintiffs shall have through **May 30, 2023,** to notify the Court whether they wish the Court to sever the medical care and retaliation claims alleged against Dr. Dauss and Centurion into a new action. If Plaintiffs fail to timely notify the Court that they want to open a new action to pursue those claims, the misjoined claims will be considered abandoned and will be dismissed without prejudice.

### IV. Conclusion and Service of Process

Plaintiffs' Eighth Amendment conditions of confinement and state law negligence claims related to the failure to provide safe water **shall proceed** against IDOC Commissioner Carter and Warden Reagle. Their claims related to violations of the Safe Drinking Water Act **shall proceed** against the IDOC and IDOC Commissioner Carter.

**All other claims are dismissed** for failure to state a claim upon which relief may be granted or are identified as misjoined as explained in Part III of this Order.

**The clerk is directed to terminate** defendant Eric Holcomb as a defendant on the docket.

**The clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to IDOC Commissioner Carter, Warden Reagle, and the IDOC in the manner specified by Rule 4(d). Process shall consist of the complaint (docket 4),

applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

**SO ORDERED.**

Date: 5/1/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

SPIROS ALATORRE
230848
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

EDWARD PARTLOW
110641
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Electronic Service to Indiana Department of Correction:

    Indiana Department of Correction (c/o Robert Bugher)

    Warden Dennis Reagle (Pendleton Correctional Facility)

    Robert E. Carter, Jr., Commissioner (employed at IDOC Central Office)